[Crim. No. 744. Fourth Dist. Jan. 15, 1951.]

THE PEOPLE, Respondent, v. HIRAM SHERMAN HENSLEY, JR., Appellant.

Robert L. Barbour for Appellant.

Fred N. Howser, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant is charged with a violation of section 288 of the Penal Code on June 8, 1950. He pleaded not guilty and not guilty because of insanity. He with-

drew his plea of not guilty, waiving a jury, and the cause proceeded to trial on July 25, 1950, on the remaining insanity issue.

Two doctors testified that in their opinion the defendant had such a diseased and deranged condition of his mental faculties on June 8, 1950, as to render him incapable of knowing the nature and quality of his acts, or of distinguishing between right and wrong in relation to those acts. On cross-examination it was brought out that the opinion of each doctor was based upon one examination of the defendant and the history given to him by the defendant himself; that the defendant claimed to have no recollection of what transpired at the time the alleged crime was committed; that he is suffering from ''psychic equivalents,'' a type of epilepsy; that persons suffering from this type do not have convulsions but instead have psychic disturbances similar to amnesia; that during such periods, which may last several minutes, they do not know what they are doing; that the defendant had suffered from this for many years and probably would be afflicted with it the rest of his life; that such attacks occur irregularly; and that they might become less frequent after proper treatment, but might occur even then. Both doctors said the defendant should have the benefit of ''encephalographic studies.''

The report of one of these doctors, who had been appointed by the court, was filed. This report states that he examined the defendant on July 6, 1950, at the county jail, and that he appeared intelligent, talked coherently and was able to give a lucid account of his past history. This history, as recited to the doctor, described an unhappy boyhood, four years' service in the Marines, work in aircraft factories and at March Field, and three and a half years' service in the Navy with a medical discharge on account of a hip injury received on shipboard. For a year and a half, beginning in 1946, he was a police officer in Riverside. He was married in 1938. He stated that he had peculiar spells from time to time which came on suddenly, lasted a few seconds and were gone. At such times while he was doing one thing he suddenly found himself doing something else, and he told of three such instances prior to 1945. Since 1945, he has been subject to occasional fainting spells, and gave two instances. With respect to the time of the alleged crime he said he awoke at 5:30 p.m., arose, shaved and dressed; that he then had 15 minutes in which to report for work; that before reporting for work he went to the recreation hall and got his 7-year-old daughter to take her

home; that he remembers picking his daughter up, and the next thing he remembers he was standing in the door of his house; and that he reported for work as usual, getting there at 6 o'clock.

A probation officer testified that he had known the defendant since February, 1950, and that in the performance of his duties he had visited and interviewed him; that he had seen him on an average of twice a month during that period; that his first interview lasted two or three hours and the other visits 15 to 20 minutes; that the defendant expressed himself in good English and appeared rational; and that during this period he seemed to be aware of what he was doing. The defendant's wife testified that after his return from overseas he was nervous and short-tempered and not able to keep a job; that he was morbid and depressed; and that she believed some of his acts during the past year were irrational.

The judge closely questioned the doctors and, after both sides had rested, expressed dissatisfaction with the evidence and stated that he would like to have "an electroencephalograph" which the doctors had said should be taken, as well as to see the records of the Veterans Bureau. He continued the hearing but insisted upon an early date saying, "If he is insane I don't want to keep him confined to the county jail any longer than necessary."

A further hearing was held on August 4. Apparently, the electroencephalograph was filed. It was reported that the records of the Veterans Bureau were unavailable and it was stipulated that these records would show nothing other than a physical disability. Thereupon the matter was submitted and the judge said that the two doctors had testified that the defendant "had a mental disability at the time this act took place and he has it at the present time"; that he would accept the testimony of the doctors that he is insane at the present time; and that he did not agree with the doctors as to his sanity at the time the offense was committed. After some further talk the judge said that he thought the only kind of an order he could make was to find the defendant sane at the time of the commission of the offense, and insane at the present time. He then said "I will find the defendant Hensley sane at the time the offense was committed and insane at the present time. He will be committed to the Mendocino State hospital, subject to the further order of the Court if he recovers his sanity."

On the same day, a formal order or judgment was filed which is headed ''Judgment of present insanity and commitment to State Hospital (Pen. Code, §§ 1367 to 1370, inclusive).'' This order recites that the judge having heard the matter has found that the defendant was sane at the time of the offense charged in the information but that he was presently insane. It was then ordered that the defendant be committed to the Department of Mental Hygiene for placement at the Mendocino State Hospital; and that when the defendant has recovered his sanity he shall be brought before the court ''for such further proceedings as may be proper in the above entitled case.'' The defendant has appealed from that order or judgment, and from an order denying his motion for a new trial.

It is first contended that the court erred in admitting the testimony of the probation officer since it did not sufficiently appear that he was an ''intimate acquaintance.'' After studying the cases cited we find no error in this connection.

It is next contended that, aside from the presumption of sanity, there was no valid evidence that the defendant was sane at the time the offense was committed; that all of the admissible evidence, the testimony of the two doctors, conclusively shows that the defendant was insane at that time; that any presumption of sanity was overcome by the evidence; and that the finding that the defendant was sane on June 8, 1950, is entirely without support. It may be pointed out that the evidence to the effect that the defendant was insane at the time this offense was committed, is not very satisfactory. While the two doctors expressed such an opinion, their reasons for that opinion were far from satisfactory. According to their testimony the defendant was sane practically all of the time but subject to temporary short lapses for a few minutes at a time. They had no knowledge of his actual condition at the time of the offense, or as to whether he then had one of his spells. They based their conclusion entirely on his self-serving statement that he did not remember what he had done during a period of less than 15 minutes. While their evidence would support an inference that he could have had such a spell, it did not necessarily establish the fact that he did.

A more serious matter is the fact that the record clearly discloses that the judge had a serious doubt as to the present sanity of the defendant, and that he had such a doubt some considerable time before he made any findings in the matter or made any order. Section 1368 of the Penal Code provides that when such a doubt arises the court must suspend all pro-

ceedings in the criminal prosecution and must order the question as to the defendant's present sanity to be determined in the manner outlined in the succeeding sections. Instead of complying with this section, the court proceeded to make findings and an order in the criminal action. The respondent argues that this entire proceeding was a hearing on the sanity question, and that it would have been a mere formality to order the separate hearing required by section 1368. However, this was a criminal proceeding involving the question of the defendant's sanity at the time of the offense and not at the time of the trial. The evidence was directed to the other question, and when a doubt as to the defendant's present sanity arose, the statutory requirement and provisions were not complied with in any respect. The defendant is entitled to a new trial, and if a doubt as to his present sanity should then arise the provisions of section 1368 et sequitur should be followed.

The judgment and order are reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

Griffin, J., and Mussell, J., concurred.